THE McLARAN REAL-ESTATE & INVESTMENT COMPANY, Respondent, v. RUFUS P. LINDSAY, Appellant.

St. Louis Court of Appeals, May 17, 1892.

Practice, Trial: WEIGHING THE EVIDENCE IN AN ACTION AT LAW. When the judgment in an action at law is supported by substantial evidence, this court will not disturb it on the ground that it is against the weight of the evidence.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Broadhead & Hezel*, for appellant.

*M. F. Taylor* and *R. L. McLaran*, for respondent.

THOMPSON, J.—In this case the defendant appealed from a judgment rendered against him in favor of the plaintiff in the sum of $184. The petition contained two counts, but the second count was withdrawn at the trial. The first count was in the nature of an action at law for moneys paid out and expended by the plaintiff for the defendant at his special instance and request. There were three items of such moneys alleged to have been so laid out and expended, but, as the court found in favor of the defendant in respect of the third item, we only have to deal with the first and second. These, as stated in the petition as amended on the trial, were as follows:

In April, 1891, to Claus Vieths & Co., on account of special tax bill number 35, for West Mill Creek·Sewer District, on Washington avenue, in city block 3759, the sum of.................$ 84 00
In April, 1891, to John Maguire, as earnest money on a contract of sale for a lot of ground in city block —— on Washington avenue, St. Louis, the sum of................................$100 00

The answer consisted of a general denial, and also of the following paragraph, attempting to set up a special defense: "And for another and further defense defendant states that, on the eighteenth day of April, 1891, he entered into a contract with plaintiff, as the agent of the owners of the property described in the petition, whereby he agreed to purchase said pieces of property at certain prices, and that this defendant paid to plaintiff the sum of $300, as earnest money under said contract, and that said contract provided that, if the sales were not closed within thirty days, said earnest money was to be forfeited; that said sales were not closed within thirty days from the date of the contract, and said sum of $300 has been forfeited

as liquidated damages; wherefore defendants ask judgment." A scrutiny of this paragraph will show that it sets up no defense at all as matter of law, nor any matter which can be regarded as good by way of set-off or counterclaim. It simply sets up a contract between the plaintiff and defendant different from the contract which is described in the petition, and states that such contract has been discharged and satisfied according to its own terms, and then prays judgment. The prayer for judgment predicated upon such a premise is a mere *non sequitur*. This special defense might have been stricken out on motion.

The case was tried by the court sitting as a jury. The bill of exceptions, which is before us, purports to set out the substance of the evidence merely. No exceptions were saved to any ruling admitting or excluding evidence. The court refused four declarations of law tendered by the defendant, but these rulings are not assigned for error.

Most of the argument which has been submitted to us seems to be directed to the propriety of the conclusion of the circuit judge upon questions of fact. It is not, of course, expected that we can retry questions of fact in actions of law, especially where we have before us only what purports to be the substance of the evidence. But, regarding the written argument which has been presented in support of the appeal as equivalent to an assignment of error, that there was no substantial evidence to support the finding of the court, we are bound to look into the record and see whether there was or not such evidence. We have looked carefully through it with this end in view. We find that there was evidence tending to show that the defendant desired to become the purchaser of a lot of ground belonging to Mrs. Pollock, whose agent to sell said lot the plaintiff was, but that the defendant desired to become the

purchaser of this lot, provided he could also become the purchaser of an adjoining lot belonging to Mr. Maguire; that, with this end in view, the plaintiff and defendant entered into a contract of purchase, whereby the defendant placed into the hands of the plaintiff $300, as earnest money, to be forfeited if he failed to comply with the terms of the contract within thirty days, and that the defendant afterwards declined to proceed with the contract, whereby the earnest money became forfeited to the plaintiff. This contract was signed by the plaintiff company, as "agent for Frances A. Pollock;" it is pleaded by the defendant in his answer, as above quoted, as the contract, not of the plaintiff, but of the owners of the property described in the petition; and it has been treated by both parties, not only in the court below, but also in their written arguments in this court, as the contract of Mrs. Pollock. There was also evidence tending to show that, outside of this written contract, the plaintiff advanced to Maguire the sum of $100, as earnest money, to secure for the defendant the purchase of the Maguire lot, and that the plaintiff also paid to Claus Vieths & Co., contractors for public work, the sum of $84, on account of a tax bill for a district sewer thereafter to be assessed. The testimony of the plaintiff's president as to the payment of this sum of $84 was as follows: "We paid the $84. Defendant asked me, or wrote to me, to make the connection with the rest of the sewer. I told him we could as soon as he paid his tax bill of $84. He said: 'Go on and pay it; you can trust me for that much, and we will settle it all up.'" The defendant gave evidence tending to show that this item was not paid on account of the special tax bill, but that it was paid to secure the connection of the house of Mrs. Pollock with the district sewer. This evidence was to the effect that, before a house can be

connected with a public sewer, the sewer bill must be substantially paid. "The builders of a sewer do not allow a connection to be made until an approximate amount to that due from the property has been paid." When the written contract for the purchase of the two lots, already referred to, was put in evidence, the president of the plaintiff, being then on the witness stand, discovered that it contained the following clause: "We guarantee to connect the sewer pipe in alley." When his attention was called to this clause, he said: "The words at the end of the contract, 'We guarantee to connect the sewer pipe in that lot,' I never saw before. We guaranteed to connect the sewer pipe in the alley; that cost $25. We paid that for Mrs. Pollock to connect the house with the sewer. Before we could make the connection, the tax for the sewer had to be paid. We talked it over time and again with Lindsay (the defendant), and he told me to pay the tax, so that the connection could be made. Mr. Lindsay told me that he would not take the property about twenty-four or twenty-five days after the written contract shown me." Further on, the same witness, referring to the same item, testified: "It is for a special tax against that property for building a sewer. The connection is a separate and distinct thing, which we also paid; but it does not figure in this case." Why the plaintiff should find it necessary to pay this sum to the contractors in advance of the assessment of the sewer tax and the rendition of the bill, unless for the purpose of securing the connection between the house of Mrs. Pollock and the sewer, was a matter which called for speculation as to conclusions of fact, to be indulged in by the trial court sitting as a jury; and, although we might reason differently upon this question, we cannot hold, in view of the evidence as above quoted, that there was no substantial evidence tending to show that, outside the

written contract, the plaintiff paid this sum of $84 at the special instance and request of the defendant. But the plaintiff strengthened its evidence on this point by the further evidence that, when the payment of these items was called to the attention of the defendant, after he elected not to comply with his contract for the purchase of the property, he said that it was "all right."

On behalf of the defendant an argument is made, the substance of which is that, in order to sustain the plaintiff's action for these items, it is necessary to build up a cause of action upon evidence outside the written contract, which, it must be presumed, merged everything understood between the parties in reference to its subject-matter. This is the general rule; but there is difficulty in applying it to this case, growing out of the fact that the evidence in question, though some of it was objected to, was not admitted under exceptions; that is, no exception was saved to the admission of it, so that it stood as evidence in the case for the consideration of the judge sitting as a jury. But the rule which the counsel here invokes does not extend so far as to exclude subsequent parol arguments, and especially with a different party, touching the subject-matter of the written contract, which subsequent agreements may of themselves afford substantive causes of action. Such, according to the plaintiff's evidence, was the case here, so far as this sewer-tax item is concerned. The written contract was entered into on the eighteenth of April, and the plaintiff's testimony was to the effect, that the request to the plaintiff, not to Mrs. Pollock, for the special payment, and the payment itself were made some days later.

This reasoning applies with equal force to the payment of the $84 to secure the sewer connection, and the $100 earnest money to Maguire. The plaintiff, having

made the written contract as the agent of Mrs. Pollock, stood under no obligation to the defendant to pay either of these sums of money. The plaintiff's evidence tends to show that the plaintiff paid them at the defendant's special instance and request. As the plaintiff was under no obligation to pay them, the evidence admitted of but two constructions, either that the plaintiff paid them at the special instance and request of the defendant and for the defendant's benefit, or that the plaintiff paid them as the agent of Mrs. Pollock. This presented a question of fact to be decided by the judge of the trial court. There was evidence to support his conclusion, that the plaintiff made the payments for the defendant at his special instance and request and outside the contract, which was not the plaintiff's contract, and that the defendant had subsequently recognized the obligation to repay the plaintiff; we cannot disturb the judgment.

The judgment will be accordingly affirmed. It is so ordered. All the judges concur.